**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KEVIN EBANKS,

      Plaintiff,

v.                                             Case No. 3:19-cv-618-J-34JBT

WEBBANK CORPORATION,

      Defendant.
_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant WebBank Corporation (WebBank)'s Motion to Dismiss for Failure to Prosecute (Doc. 39; Motion), filed on April 27, 2020. In the Motion, WebBank seeks dismissal of the case under Rule 41(b), Federal Rules of Civil Procedure (Rule(s)), and Local Rule 3.10, United States District Court, Middle District of Florida (Local Rules(s)). See Motion at 1.[1] The Court held a status conference on May 7, 2020, to discuss the Motion and the status of the action with the parties. See Minute Entry (Doc. 42). At the May 7, 2020 status conference, the Court vacated the Case Management and Scheduling Order (Doc. 24), directed Plaintiff Kevin Ebanks to respond to the Motion by May 13, 2020, and directed counsel for Ebanks (Plaintiff's counsel) to show cause by the same date why the case should not be dismissed for failure to prosecute. Id. Plaintiff's counsel filed a response to the Motion on May 13, 2020. See Plaintiff's Response to

---

[1] In the Motion WebBank additionally requests attorneys' fees pursuant to "the Court's inherent authority, 28 U.S.C. § 1927, or provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681n or 1681o." Motion at 1. The Court will address WebBank's request for attorneys' fees separately from the Rule 41(b) and Local Rule 3.10 analysis. See infra Section IV.

WebBank's Motion to Dismiss for Failure to Prosecute (Doc. 43; Response). Accordingly, the matter is ripe for review.

**I.     BACKGROUND**

Ebanks initiated this action by filing a complaint on May 24, 2019. See Complaint and Demand for Jury (Doc. 1; Complaint). On May 28, 2019, the Court entered an Order striking the Complaint as an impermissible shotgun pleading and directing Ebanks to file an amended complaint in compliance with the Rules and applicable Eleventh Circuit precedent, no later than June 11, 2019. See generally Order (Doc. 4; May 28 Order). In the May 28 Order, the Court cautioned Ebanks that failure to comply with the Court's directive could result in a dismissal of the action. See id. at 3. However, despite the Court's admonition, Ebanks failed to file an amended complaint by June 11, 2019. As such, the Court entered an Order on June 19, 2019, directing Ebanks to show cause by July 3, 2019, why the case should not be dismissed without prejudice for failure to prosecute. See Order (Doc. 6; First Order to Show Cause). On July 3, 2019, Ebanks filed an amended complaint and a response to the Court's First Order to Show Cause. See First Amended Complaint and Demand for Jury (Doc. 7; Amended Complaint); Plaintiff's Response to This Court's Order to Show Cause (Doc. 8; July 3 Show Cause Response). In the Amended Complaint, Ebanks asserts claims for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq., against Defendants Trans Union, LLC, (Trans Union), Flagship Credit Acceptance, LLC, (Flagship), and WebBank Corporation (WebBank). See generally Amended Complaint.

In the July 3 Show Cause Response, Ebanks represents that "Plaintiff's failure to timely file the corrected complaint resulted from an inadvertent error and not from any

intentional act or to stall, delay or otherwise thwart the orderly progression of this case." See July 3 Show Cause Response at 2. Relying on this representation, on July 16, 2019, the Court entered an Endorsed Order discharging its First Order to Show Cause. See Endorsed Order (Doc. 9).

WebBank answered the Amended Complaint on August 22, 2019, and Trans Union followed suit on August 28, 2019. See WebBank's Answer to First Amended Complaint (Doc. 17); Defendant Trans Union, LLC's Answer and Defenses to Plaintiff's First Amended Complaint (Doc. 18).[2] Then, on October 1, 2019, Plaintiff's counsel, Michael Duggar, filed Former Plaintiff's Counsel's Notice of Termination (Doc. 21; Notice). In the Notice, Mr. Duggar sought to "give[] notice of his termination as of August 27, 2019." See Notice at 1. Additionally, Mr. Duggar stated that

> New Counsel should be substituting into the Middle District shortly, and the New Counsel will be serving in a more experienced, competent and more expeditious manner. As such, Former Plaintiff's Counsel, is not comfortable acting on behalf of the Plaintiff and fears any further action by Former Counsel may unfairly prejudice the Plaintiff and/or substituted Plaintiff's Counsel. Former Plaintiff's Counsel apologizes for any inconvenience and delays as a result of his termination.

Id. The Honorable Joel B. Toomey, United States Magistrate Judge, reviewed the Notice and construed it as a motion to withdraw. See generally Order (Doc. 22), entered on October 3, 2019. Judge Toomey then denied the motion without prejudice for failure to comply with the relevant Local Rules and Rules Regulating the Florida Bar. Id. In doing so, Judge Toomey determined that Mr. Duggar's withdrawal could cause a continuance or

---

[2] WebBank and Trans Union each filed a motion for an extension of time to respond to the Amended Complaint, and the Court granted each motion. Thus, WebBank and Trans Union timely filed their respective answers. See Unopposed Motion to Enlarge Time to Respond to First Amended Complaint (Doc. 10), filed on July 26, 2019; Endorsed Order (Doc.12), entered on August 19, 2019; Unopposed Motion for Extension of Time for Defendant Trans Union LLC to Answer or Otherwise Respond to Plaintiff's Amended Complaint (Doc. 13); Endorsed Order (Doc. 16), entered on August 7, 2019.

3

delay and thus Judge Toomey noted that, to the extent possible, in any renewed motion counsel must address the criteria set forth in Rule 4-1.16 of the Rules Regulating the Florida Bar and Local Rule 2.03, and should also address "whether—and if so, when—Plaintiff intends to obtain new counsel, or how he otherwise intends to proceed in this action." See id. at 2. Mr. Duggar did not file a renewed motion.

On October 10, 2019, the Court entered a Case Management and Scheduling Order and Referral to Mediation, in which the Court directed the parties to file their Certificates of Interested Persons and Corporate Disclosure Statements by October 25, 2019. See Order (Doc. 24). Ebanks failed to do so. On October 30, 2019, the Court entered an Order noting Ebanks's apparent failure to timely effect service of process on Defendant Flagship and his failure to comply with the Court's direction requiring the parties to file Certificates of Interested Persons and Corporate Disclosure Statements. See Order (Doc. 26; Second Order to Show Cause). In the Second Order to Show Cause, the Court directed Ebanks to show cause by written response no later than November 13, 2019, why the claims raised against Defendant Flagship should not be dismissed without prejudice, why the case should not be dismissed without prejudice for failure to prosecute, and why sanctions should not be imposed for Ebanks's failure to comply with the Court's orders. See id. at 1-2. Again, Ebanks failed to do as the Court directed.

Despite not complying with the Court's Second Order to Show Cause, through new counsel, Ebanks took the following actions. First, Alan Ginsberg filed a notice of appearance on behalf of Ebanks on November 1, 2019. See Notice of Appearance (Doc. 27). Then, on November 7, 2019, Ebanks filed Plaintiff's Certificate of Interested Persons

4

and Corporate Disclosure Statement.  <u>See</u> Certificate (Doc. 29).[3]  On November 12, 2019, Ebanks filed a Return of Service as to Defendant Flagship Credit Acceptance, LLC.  <u>See</u> Return of Service Executed (Doc. 31).  The following day, Ebanks filed a motion for entry of clerk's default against Flagship Credit Acceptance, LLC.  <u>See</u> Request for Entry of Clerk's Default as to Flagship Credit Acceptance, LLC (Doc. 32; Motion for Default).

Judge Toomey entered an order on November 25, 2019, taking the Motion for Default under advisement and directing Ebanks to file a memorandum of law no later than December 9, 2019, explaining how service on Flagship was sufficient, or conceding that service was insufficient.  <u>See</u> Order (Doc. 33).  In that Order, Judge Toomey cautioned that Ebanks's failure to file a memorandum as directed would likely result in the denial of the Motion for Default and the dismissal of the claims asserted against Flagship for failure to prosecute.  <u>See</u> <u>id.</u> at 2.  Yet again, Ebanks failed to follow a Court order.  This time, he did not file a memorandum regarding service on Flagship as directed by the Court.  In accordance with the Court's previous admonition, the Court dismissed the claims raised against Flagship without prejudice in an order entered December 23, 2019.[4]  <u>See</u> Order (Doc. 34).  In doing so, the Court noted Ebanks's recent failures to adhere to Court orders, namely, his failure to file a written response to the Court's Second Order to Show Cause,

---

[3] Also on November 7, 2019, Trans Union and Ebanks filed a joint notice of settlement. <u>See</u> Joint Notice of Settlement (Doc. 28).  Upon review of the Joint Notice of Settlement, the Court entered an Order in which the Court noted that it does not routinely retain jurisdiction to enforce settlement agreements, especially where the parties thereto fail to provide the Court with a copy of the agreement or make the Court aware of its terms.  <u>See</u> Order (Doc. 30), entered on November 8, 2019.  However, the Court allowed Ebanks and Trans Union until January 7, 2020, to file a joint stipulation of dismissal or other appropriate documents to close out the claims between them.  <u>Id.</u>  However, neither Ebanks nor Trans Union filed any such document.  Accordingly, on January 21, 2020, the Court entered an Order dismissing the claims raised between Ebanks and Trans Union without prejudice and directing the Clerk of Court to terminate Trans Union from the docket.  <u>See</u> Order (Doc. 35).

[4] The Court additionally directed the Clerk of Court to terminate Ebanks's Motion for Default and directed the Clerk of Court to terminate Flagship from the docket.

5

and failure to file a memorandum as directed by Judge Toomey. Thus, the Court concluded that Ebanks had failed to prosecute his claims against Flagship and that dismissal of Ebanks's claims against Flagship without prejudice was warranted under Rule 41(b) and Local Rule 3.10. Id. at 2.

The remaining Defendant, WebBank, filed a motion on March 4, 2020, seeking to extend the mediation deadline previously set by the Court. See WebBank's Unopposed Motion to Extend Mediation Deadline (Doc. 37). The Court granted WebBank's motion the following day, extending the mediation deadline to May 15, 2020. See Endorsed Order (Doc. 38), entered March 5, 2020. WebBank filed the instant Motion seeking dismissal on April 27, 2020. See generally Motion. Upon review of the Motion, the Court became concerned with defense counsels' representation that they had been informed in early March that Plaintiff's counsel had been unable to reach his client and thus intended to withdraw from the case. See Motion at 6. Similarly worrisome to the Court was defense counsels' assertion that since that time, Plaintiff's counsel had failed to respond to defense counsels' communications. Id. at 10. Given these representations, the Court held a status conference at which counsel for both parties appeared via telephone on May 7, 2020.[5] See Notice of Hearing (Doc. 41); Minute Entry (Doc. 42; Hearing).

At the Hearing, Plaintiff's counsel confirmed that he had not had contact with his client since he "settled with the other two defendants," which apparently occurred in November of 2019.[6] Additionally, counsel for Ebanks stated he was "still trying to get in

---

[5] Alan Ginsberg appeared on behalf of Ebanks.
[6] As noted supra n. 3, Ebanks filed the Joint Notice of Settlement (Doc. 28) with Defendant Trans Union on November 7, 2019. The Court allowed Ebanks and Trans Union until January 7, 2020, to file a joint stipulation of dismissal or other appropriate documents to close out the claims between them. See Order (Doc. 30), entered November 8, 2019. No such documents were filed and the Court dismissed Ebanks's claims against Trans Union without prejudice on January 21, 2020. See Order (Doc. 35). On December 23, 2019, the Court dismissed without prejudice the claims against Defendant Flagship for failure to prosecute after Plaintiff twice

6

contact with" his client, and indicated that he thought Ebanks intended to dismiss his claims against WebBank. In light of this chronology, the Court directed Ebanks to show cause by May 13, 2020, why the case should not be dismissed under the Local Rules of this Court for failure to prosecute. See Minute Entry (Doc. 42); see also Local Rule 3.10(a) ("Whenever it appears that any case is not being diligently prosecuted the Court may, on motion of any party or on its own motion, enter an order to show cause why the case should not be dismissed, and if no satisfactory cause is shown, the case may be dismissed by the Court for want of prosecution."). Additionally, the Court directed Ebanks to respond to the Motion by May 13, 2020, and vacated the Case Management and Scheduling Order (Doc. 24), thereby relieving the parties of any further obligations under that Order pending the Court's resolution of the Motion. See Minute Entry (Doc. 42).[7]

Plaintiff's counsel filed the Response on May 13, 2020, and filed a response to the Court's order to show cause on the same day. See generally Response; Plaintiff's Response to This Court's Order to Show Cause (Doc. 44; May 13 Show Cause Response). In the May 13 Show Cause Response, Plaintiff's counsel sought to "rel[y] upon" and "incorporate" the assertions made in the Response "for the sake of brevity." See May 13 Show Cause Response at 1. Upon review of both the Response and the May 13 Show Cause Response, the Court determined that Plaintiff's counsel had not sufficiently addressed the Court's specific concerns. Accordingly, the Court entered an Order on May 15, 2020, striking the May 13 Show Cause Response and directing Plaintiff's counsel to

---

failed to respond to Court orders related to that Defendant. See Order (Doc. 34). Thus, it appears counsel has not had contact with his client since November of 2019.

[7] In the Motion, in addition to seeking dismissal, WebBank sought another extension of the mediation deadline. See Motion at 9-10. By vacating the Case Management and Scheduling Order, the Court rendered this request moot.

file an amended response by May 26, 2020 that "fully and directly addresses the Court's concerns" about Ebanks's failure to prosecute the case. See Order (Doc. 45; May 15 Order) at 3. In doing so, the Court expressly reiterated its concerns regarding defense counsels' representations in the Motion, and determined that the May 13 Show Cause Response was "entirely inadequate because counsel completely failed to do what the Court ordered." See id. at 2. Additionally, the Court cautioned that failure to comply with the directives in the May 15 Order could result in dismissal of the action without further notice. Id.

On May 26, 2020, Plaintiff's counsel filed Plaintiff's Response to This Court's Order to Show Cause (Doc. 46; May 26 Show Cause Response), in which Plaintiff's counsel represents that he is unable to contact Mr. Ebanks. See generally May 26 Show Cause Response. Specifically, Plaintiff's counsel states that:

> Plaintiff's counsel has reached out to his client on numerous occasions throughout the course of this case, but has not heard from Plaintiff for many months. Accordingly, Plaintiff's counsel cannot explain why his client has not timely participated in this litigation or whether he is prepared to actively prosecute this claim going forward. That is why Plaintiff's counsel intended to seek withdrawal of his representation of Plaintiff, but still wanted to try to reach Plaintiff. Unfortunately, Plaintiff's counsel has not been able to reach Plaintiff.

May 26 Show Cause Response at 2. Notwithstanding Mr. Ebanks's remarkable absentia, Plaintiff's counsel requests that the Court deny WebBank's Motion, allow counsel to file a motion to withdraw, and allow Ebanks thirty days to seek successor counsel or proceed pro se. See id.

## II.   STANDARD OF REVIEW

Rule 41(b) "authorize[s] a district court, on defendant's motion, to dismiss an action for failure to prosecute or to obey a court order or federal rule." Manning v. Ga. Med. Billing

Specialists, Inc., No. CV 204-186, 2005 WL 1638369, at *1 (S.D. Ga. July 12, 2005) (citing Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985)).  Pursuant to Rule 41(b), dismissal of an action is appropriate when there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." Goforth, 766 F.2d at 1535 (emphasis added); see also Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993) (reversing dismissal under Rule 41(b) where the record did not support a finding of willful delay); Hildebrand v. Honeywell, Inc., 622 F.2d 179, 181 (5th Cir. 1980).[8]  Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules.  See Rule 41(b); see also Goforth, 766 F.2d at 1535.  However, that discretion is not unlimited, and the Court is mindful that dismissal with prejudice "is a sanction of last resort, applicable only in extreme circumstances, and generally proper only where less drastic sanctions are unavailable." McKelvey v. AT & T Technologies, Inc., 789 F.2d 1518, 1520 (11th Cir. 1986).  "A finding of such extreme circumstances necessary to support a sanction of dismissal must, at a minimum, be based on evidence of willful delay." Id. at 1520.  "A party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal." EEOC v. Troy State University, 693 F.2d 1353, 1357 (11th Cir. 1982).  Moreover, the record must also support a finding "that lesser sanctions are inadequate to correct such conduct." Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1339 (11th Cir. 2005) ("Our case law has articulated with crystalline clarity the outer boundary of the district court's discretion in these matters: dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct.").

---

[8] This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

9

### III. APPLICATION OF LEGAL STANDARD

#### A. Plaintiff Ebanks's Clear Record of Delay

In the Motion, WebBank seeks dismissal of Ebanks's Complaint with prejudice under Rule 41(b) and Local Rule 3.10, for failure to prosecute the case based on what WebBank describes as Ebanks's "clear pattern of delay." See generally Motion.[9] Specifically, WebBank contends that Ebanks's failure to actively advance the litigation, failure to timely respond to discovery requests or facilitate basic court-required tasks, and failure to follow basic discovery rules demonstrate Ebanks's egregious disinterest in prosecuting his complaint, and warrant dismissal of his case with prejudice. See id. at 6-7. Additionally, WebBank asserts that Ebanks's "last meaningful action" in the case took place in November of 2019 when Ebanks "sent discovery requests clearly not tailored to the claims against WebBank and then neglected to take the necessary steps to actually receive requested documents by negotiating a confidentiality agreement with WebBank." Id. at 8 (citing Cruz Dec'l ¶¶ 6, 8). Further, WebBank maintains that Ebanks has not conducted any other discovery, noticed depositions, or disclosed experts, and argues that he "has dragged his feet" in complying with "basic court and scheduling requirements." Id. (citing Cruz Dec'l ¶¶ 7, 13). WebBank also contends that Ebanks has "relied on WebBank's counsel to conduct all mandatory communication with the mediator, and [] never responded to WebBank's discovery requests, even after receiving a deficiency notice." Id. at 8-9 (citing Cruz Dec'l ¶¶ 9-11, 13). Finally, WebBank points to Plaintiff's counsel's representation that he planned to withdraw and subsequent failure to file an appropriate

---

[9] In support of the Motion, WebBank filed the Declaration of Ailen Cruz (Doc. 40; Cruz Dec'l) on April 27, 2020.

10

motion to effectuate such plans as evidence of dilatory behavior. Id. at 9 (citing Cruz Dec'l ¶¶ 15-17).

In the Response, Plaintiff's counsel contends that Ebanks has not failed to prosecute his case. See Response at 1. Specifically, Plaintiff's counsel asserts that Plaintiff has not engaged in "willful conduct or willful delay," because Plaintiff conducted some discovery, participated in the scheduling of mediation, and Plaintiff's counsel informed WebBank that he intended to withdraw as counsel. Id. at 4.

The record in this action reflects that, since its inception, Ebanks has caused significant delay and disregarded the Court's orders. Indeed, on four separate occasions, Ebanks has failed to follow the Court's directives. First, Ebanks failed to file an amended complaint as directed by the Court. See Order (Doc. 4); First Order to Show Cause (Doc. 6).[10] Then, Ebanks failed to file a Certificate of Interested Persons and Corporate Disclosure Statement as directed by the Court. See Order (Doc. 24); Second Order to Show Cause (Doc. 26). Subsequently, Ebanks failed to file a memorandum regarding service of process on Flagship, as directed by the Court, which resulted in the dismissal of Ebanks's claims against Flagship. See Order (Doc. 33); Order (Doc. 34). Most recently, Ebanks's unexplained absence, which was brought to light by the instant Motion, required the Court to order him to show cause why the case should not be dismissed for failure to prosecute, see Minute Entry (Doc. 42), and strike the May 13 Show Cause Response because it "completely failed to do what the Court ordered," May 15 Order at 2.

---

[10] The Court discharged this Order after Ebanks filed a written response explaining that the delay was inadvertent. See Endorsed Order (Doc. 9); Plaintiff's Response to This Court's Order to Show Cause (Doc. 8).

More importantly, it appears from the representations in the May 26 Show Cause Response that Ebanks himself has entirely abandoned his pursuit of the claims in this action. Indeed, based on these representations and counsel's statements at the May 7, 2020 Hearing, it appears that Ebanks has been wholly absent from the instant litigation since November 2019. As a result of his absence, this case has failed to move beyond the initial stages of discovery and has come to a complete halt. Ebanks's apparent disinterest in prosecuting his case and the numerous delays occasioned by his conduct have resulted in a clear record of delay that is without question unacceptable and warrants dismissal of this action for failure to prosecute. See Goforth, 766 F.2d at 1535.

### B. Lesser Sanctions Will Not Suffice

Dismissal with prejudice is proper when the record supports a finding "that lesser sanctions are inadequate to correct such conduct." Betty K Agencies, Ltd., 432 F.3d at 1339. The Court finds based upon the record in this action that imposing a lesser or alternative sanction on Ebanks will not curtail or deter Ebanks's dilatory behavior. Ebanks's unexplained absence from his case for "many months" renders futile all options available to the Court other than dismissal with prejudice. Indeed, because Plaintiff's counsel remains unable to contact his client, the Court questions how any lesser sanction could suffice to prompt Ebanks to regain an interest in his case and begin adhering to the Rules, Local Rules, and orders of the Court. Moreover, the Court has provided Ebanks with ample opportunities to remain involved in his case and has cautioned Ebanks at each juncture that failure to comply with the Court's orders could result in the dismissal of his case. Despite these warnings, throughout the course of these proceedings Ebanks has disregarded the Court's directives, failed to take any steps to prosecute his claims, and

hindered WebBank's attempts to move the case forward. Ebanks's inexplicable absence entirely frustrates any possibility of reaching a fair and equitable disposition of this cause. Accordingly, the Court determines that Ebanks's actions in this case present a willful and clear record of delay. The Court further finds that no lesser sanction short of dismissal with prejudice exists that would deter Ebanks from continuing to exhibit dilatory behavior and disregard of the Court's orders and his obligations in this litigation. As such, WebBank's Motion is due to be granted to the extent that WebBank seeks dismissal of the Amended Complaint with prejudice.

## IV. ATTORNEYS' FEES

In the Motion, WebBank also asks the Court to order Plaintiff and his attorneys to compensate WebBank for the fees and costs it incurred in defending this action pursuant to the Court's inherent authority, 28 U.S.C. § 1927, or provisions of the FCRA, 15 U.S.C. §§ 1681n or 1681o. See Motion at 1. Having considered the record and the applicable authority, the Court denies WebBank's request.

A court may sanction a party or an attorney pursuant to its "inherent power" to police behavior that undermines the judiciary's ability to achieve the just, orderly, and expeditious disposition of cases. Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) (affirming the Court's broad inherent authority to sanction a party for "conduct before the court and that beyond the Court's confines"); Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1322-23 (11th Cir. 2002) (affirming an award of sanctions against an attorney pursuant to the court's inherent authority). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 44 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). "The inherent power 'is both broader and narrower than other

13

means of imposing sanctions.'" Peer v. Lewis, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting Chambers, 501 U.S. at 46). It is broader in the sense that, "[w]hile other sanction mechanisms only reach certain individuals or conduct, 'the inherent power extends to a full range of litigation abuses' and 'must continue to exist to fill in the interstices.'" Id. (quoting Chambers, 501 U.S. at 46). "Indeed, the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power." Id. (quoting In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995)) (internal quotation marks omitted). At the same time, the inherent power is narrower in the sense that a finding of bad faith is required to impose such sanctions. Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

Pursuant to 28 U.S.C. § 1927, a court is empowered to sanction an attorney who "unreasonably and vexatiously" "multiplies the proceedings." The Eleventh Circuit has instructed that "the plain language of the statute imposes three essential requirements for an award of sanctions under § 1927." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)). First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Id. Additionally, the Eleventh Circuit has "consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Id. (citing Avirgan v. Hull, 932

14

F.2d 1572, 1582 (11th Cir.1991)); Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003)).

Last, sections 1681n and 1681*o* of the FCRA provide that when the Court finds "that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." See 15 U.S.C. §§ 1681n(c), 1681*o*(b); see also Nagle v. Experian Information Solutions, Inc., 297 F.3d 1305 (11th Cir. 2002) (discussing the circumstances when an award of attorneys' fees under the FCRA is proper); Edwards v. Auto Showcase Motorcars of Palm Beach, LLC, No. 09-80932-CIV, 2011 WL 1303166 (S.D. Fla. April 5, 2011) (denying defendant's motion for attorneys' fees under the FCRA because the case was ultimately dismissed due to plaintiff's failure to file an amended complaint within the required time and defendant presented no evidence of bad faith or harassment).

Here, WebBank generally contends that an award of attorneys' fees and costs is warranted because Ebanks and his counsel brought a "meritless FCRA lawsuit against WebBank and did not diligently prosecute [the] case." See Motion at 1, 10.[11] WebBank contends that in doing so Ebanks and his attorneys "unreasonably prolonged frivolous litigation that they never intended to earnestly pursue." See id. Specifically, WebBank asserts that the case was meritless before Ebanks filed it because WebBank's reporting of the natural disaster was accurate and Ebanks suffered no damages as a result of WebBank's actions or inaction. See id. at 4. In this regard, WebBank posits that Ebanks

---

[11] WebBank's attorneys represent that they "will provide a separate bill of costs and fees should the Court grant its request [for attorneys' fees]." Motion at 10, n. 3.

15

and his counsel have "always known that WebBank neither broke the law nor [harmed] Mr. Ebanks." Id. at 12. In support, WebBank primarily points to its requests for admission which Ebanks, by failing to respond to, admitted.[12] See Motion at 12-13 (citing Doc. 40, Ex. H (Doc. 40-8), at ¶¶ 12, 15-19).

Plaintiff's counsel responds that an award of attorneys' fees under the FCRA would be improper because "Plaintiff has not filed an unsuccessful pleading, motion, or other paper in this case," and "Plaintiff has not filed any paper in this case in bad faith or for purposes of harassment." See Response at 5, 6. Addressing WebBank's request for attorneys' fees under 28 USC § 1927, Plaintiff's counsel asserts that he has not engaged in conduct tantamount to bad faith, nor did Ebanks multiply the proceedings. See id. at 8. Finally, with regard to WebBank's request for attorneys' fees under the Court's inherent powers, Plaintiff's counsel notes that "WebBank cited no authority that a court has inherent authority to award attorney's fees to a prevailing defendant that filed a motion to dismiss for failure to prosecute." Id. at 9.

Although the Court has determined that WebBank's Motion is due to be granted to the extent that WebBank seeks dismissal of this case with prejudice, the Court has done so based on the record of willful delay and failure to participate in this litigation, not based upon any finding regarding the merits of Ebanks's claims. Moreover, while the actions of Ebanks and his counsel warranted dismissal with prejudice under Rule 41(b), they were not so unreasonable and vexatious as to warrant the additional sanction of an award of fees and costs. Additionally, the conduct of Ebanks and his counsel did not multiply the proceedings or amount to bad faith. Barnes, 158 F.3d at 1214; Amlong, 500 F.3d at 1239;

---

[12] Ebanks failed to respond to WebBank's requests for admission pursuant to Rule 36. Accordingly, the matters addressed in WebBank's requests for admission are deemed admitted. See Rule 36(a)(3), (b).

16

15 U.S.C. §§ 1681n(c), 1681*o*(b).  Therefore, an award of attorneys' fees is not warranted under the Court's inherent powers, 28 U.S.C. § 1927, or under the FCRA, and WebBank's request for attorneys' fees is due to be denied.

Accordingly, it is hereby

**ORDERED:**

1. Defendant WebBank Corporation's Motion to Dismiss for Failure to Prosecute (Doc. 39; Motion) is **GRANTED in part** and **DENIED in part**.
    a. The Motion is **GRANTED** to the extent that this case is **DISMISSED with prejudice** for failure to prosecute under Rule 41(b).
    b. The Motion is **DENIED** in all other respects.
2. The Clerk of the Court is directed to terminate any remaining deadlines or pending motions as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of September, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc27
Copies to:
Counsel of Record